UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE C., ex rel. J.L., a minor,<br><br>                              Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>                              Defendant. | Case No.:  24-cv-1032-RBM-KSC<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for benefits. Doc. Nos. 1, 17. This Court directed the parties to explore informal resolution of the matter through the meet-and-confer process, but the parties were unable to resolve the case on their own. Doc. Nos. 13, 18. Having reviewed the parties' briefing and the Administrative Record ("AR"), the Court recommends the decision of the Commissioner in this matter be vacated and the matter remanded for further proceedings as stated in this Report and Recommendation.

24cv1032

# I. BACKGROUND

Plaintiff applied for Supplemental Security Income benefits on March 5, 2021. AR 64, 187-88.[1] The Social Security Administration denied the claim on October 6, 2021. AR 95-98. The Administration denied plaintiff's claim upon rehearing on March 28, 2022. AR 105-09. On October 14, 2022, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 111. Plaintiff, represented by counsel and with plaintiff's mother acting on plaintiff's behalf, appeared before the ALJ on May 5, 2023. AR 17. Plaintiff's attorney and the ALJ both examined plaintiff's mother at the hearing. AR 37-62. After reviewing the documentary evidence in the record and hearing testimony, the ALJ ultimately concluded plaintiff was not disabled in a decision dated August 10, 2023. AR 17-30.

The ALJ's decision followed the three steps prescribed by applicable regulations under which the ALJ must sequentially determine (1) if the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a "severe" impairment or combination of impairments; and (3) if the claimant's impairment or combination of impairments meets, medically equals, or functionally equals one of the impairments identified in the regulatory Listing of Impairments. *See* 20 C.F.R. § 416.924; AR 17-18. A finding of "yes" at step one or "no" at step two or three means a claimant is not disabled. *Id*. However, a claimant is presumed disabled if all three steps of the sequential evaluation process are satisfied. *Id.*

At step one, the ALJ found plaintiff, a "school-age child," had not engaged in substantial gainful activity. AR 18.[2] At step two, the ALJ found plaintiff had "the following

---

[1]    The Court adopts the parties' citations to the certified record in this matter. All other citations reflect pagination assigned by the Court's CM/ECF case management system. For clarity, the Court uses the term "plaintiff" to refer to the minor child who applied for benefits, even though the instant case was brought by the child's mother as a natural guardian.

[2]    At the time of the hearing, plaintiff was nine years old. *See* AR 18.

2

severe impairments: attention deficit hyperactivity disorder (ADHD); and oppositional defiance disorder (ODD)." *Id.* At step three, the ALJ found plaintiff's impairments did not meet, medically equal, or functionally equal any of the Listings. AR 18, 20.

In determining plaintiff did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of one of the Listings, the ALJ considered Listings 112.08 (personality and impulse-control disorders) and 112.11 (neurodevelopmental disorders). AR 18. The ALJ ultimately determined plaintiff did not meet the "Paragraph B requirements" for either Listing, as plaintiff did not have at least one extreme limitation or two marked limitations. *Id.* Specifically, the ALJ determined plaintiff had (1) a "mild" limitation in the Paragraph B criterion for "understanding, remembering, or applying information;" (2) a "moderate" limitation in the Paragraph B criterion for "interacting with others;" (3) a "mild" limitation in the Paragraph B criterion for "concentrating, persisting, or maintaining pace;" and (4) a "marked" limitation in the Paragraph B criterion for "adapting or managing oneself." AR 19–20.

In determining plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of one of the Listings, the ALJ ultimately determined plaintiff did not have at least one "extreme" limitation or two "marked limitations" in the relevant functional domains. AR 21. Specifically, the ALJ determined plaintiff had (1) a "less than marked" limitation in the functional domain for "acquiring and using information;" (2) a "less than marked" limitation in the functional domain for "attending and completing tasks;" (3) a "marked" limitation in the functional domain for "interacting and relating with others;" (4) no limitation in the functional domain for "moving about and manipulating objects;" (5) a "less than marked" limitation in the functional domain for "caring for oneself; and (6) no limitation in the functional domain for "health and physical well-being." AR 21–30. Thus, in a decision dated August 10, 2023, the ALJ concluded plaintiff was not disabled. AR 30. The Appeals Council affirmed the ALJ's decision on April 9, 2024. AR 1-3. This appeal followed. Doc. No. 1.

////

24cv1032

## II. STANDARD OF REVIEW

This Court will affirm the ALJ's decision if (1) the ALJ applied the correct legal standards; and (2) the decision is supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin*., 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if there is evidence in the record to support more than one rational interpretation, the Court will defer to the Commissioner. *Id.*

Even if the ALJ makes an error, this Court can nonetheless affirm the denial of benefits if such error was "harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'" *Ford v Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). The Court's ability to uphold the ALJ's decision is limited in that this Court may not make independent findings and therefore cannot uphold the decision on a ground not asserted by the ALJ. *See Stout v. Comm'r of the Soc. Sec. Admin*., 454 F.3d 1050, 1054 (9th Cir. 2006).

## III. ANALYSIS OF THE COMMISSIONER'S DECISION

Plaintiff identifies two issues for this Court's review. First, plaintiff contends the ALJ erroneously concluded plaintiff's impairments did not satisfy the paragraph B criteria for the relevant Listings. Doc. No. 21 at 7-8. Second, plaintiff contends the ALJ erroneously concluded plaintiff's impairments did not functionally equal the relevant Listings. *Id.* at 20-21. The Court will address each issue in turn.

### (A)    Whether the ALJ Properly Evaluated the Paragraph B Criteria of the Relevant Listings

The ALJ considered whether plaintiff's impairments met or medically equaled the severity of Listing 112.08 and Listing 112.11. AR 18. Both Listings require a benefits claimant to satisfy both the paragraph A and paragraph B criteria, with paragraph A criteria generally supplying the relevant medically determinable symptoms of a mental impairment while the paragraph B criteria set out the standards for the degree to which those impairments limit the claimant's ability to function. *See generally* 20 C.F.R. pt. 404, app.

1, § 112.00(A)(2). Here, the ALJ did not consider whether plaintiff met the paragraph A criteria for both Listings. AR 18-19. The ALJ only concluded the paragraph B criteria had not been met. *Id.* The ALJ considered both Listings together, which is appropriate because both Listings use the same paragraph B criteria. *See* AR 18; 20 C.F.R. pt. 404, app. 1, §§ 112.08(B), 112.11(B).

To meet the paragraph B criteria for either Listing, a claimant must have an "extreme" limitation in one or a "marked" limitation in two of the following "areas of mental functioning":

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

*See* 20 C.F.R. pt. 404, app. 1, §§ 112.08(B), 112.11(B).[3] Plaintiff challenges the ALJ's conclusions as to the criteria of "[i]nteract with others" and "[c]oncentrate, persist, or maintain pace." Doc. No. 21 at 8. Because plaintiff had a "marked" limited in "adapting or managing oneself" (*see* AR 20), an erroneous calculation of any one of the three other criteria could prove dispositive of this case. Thus, the Court will consider whether the ALJ properly applied the two paragraph B criteria at issue.

### (1)    Whether the ALJ Properly Evaluated Plaintiff's Ability to Interact with Others Under the Paragraph B Criteria

The Regulations describe the "interact with others" criterion as follows:

This area of mental functioning refers to the abilities to relate to others age-appropriately at home, at school, and in the community. Examples include: Engaging in interactive play; cooperating with others; asking for help when needed; initiating and maintaining friendships; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to

---

[3]    The Regulations provide more comprehensive definitions of each of these paragraph B criteria. 20 C.F.R. pt. 404, app. 1, § 112.00(E).

requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. How you manifest this area of mental functioning and your limitations in using it depends, in part, on your age.

*See* 20 C.F.R. pt. 404, sub. pt. P, app. 1, § 112.00(E)(2). The ALJ concluded plaintiff had a "moderate" limitation in this area. AR 19. Plaintiff claims the ALJ's conclusion is erroneous because the ALJ "mischaracterized the evidence, failed to consider the record as a whole, and erroneously stated that J.L. improved with medication," all of which cannot be reconciled with the later finding of a "marked" limitation in the "domain of 'interacting and relating with others'" because of the "broad overlap" with the paragraph B criteria and the relevant domain. Doc. No. 21 at 8-10.

Although a claimant's treatment records may be probative of whether the claimant is disabled, an ALJ must indeed consider the record as a whole when making a disability determination based at least partly on the claimant's treatment history. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Although the ALJ is not required to laundry-list every piece of evidence in the record, the ALJ must address "significant probative evidence" when making a disability determination. *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022). The ALJ may not "cherry pick" evidence to deny benefits while ignoring evidence of disability. *Attmore v. Colvin*, 827 F.3d 872, 877-78 (9th Cir. 2016).

The ALJ's decision in this case directly cited only two pages of documentary evidence to support his conclusion: an April 2022 report from plaintiff's teacher that addresses plaintiff's ability to participate in school activities with and without the benefits of his ADHD medications. AR 19 (citing AR 566-67). The ALJ also cited plaintiff's mother's testimony during the hearing, claiming she "testified [plaintiff] participates in class, and cooperates more than he did in prior years," and she "reported [plaintiff] has not

destroyed any school property" while he "has been more consistent in taking his ADHD medications, which has improved his behavior inside and outside of the school setting." *Id.*

The ALJ construed this evidence too narrowly. The teacher questionnaire, for one, was more detailed than the ALJ's quotation would suggest. Plaintiff's teacher noted an "[e]xcessive amount of tardies due to medication refusal." AR 565. Plaintiff's "extreme behaviors" and "defiance" had "impacted" his ability to participate in school and achieve academically. AR 567. Plaintiff had a range of "problems," from "slight" to "serious" in his abilities to interact with others, the management of which was "dependent on use of medication." AR 568. As for plaintiff's medical conditions, the questionnaire noted plaintiff "often refuses to take" his ADHD medication. AR 571. The substance of the teacher questionnaire is, therefore, more nuanced than simply showing plaintiff improved on medication, and the ALJ cherry-picked only the favorable portions of the questionnaire.

Similarly, plaintiff's mother provided a much wider range of testimony than the ALJ relayed. At the hearing, she testified how plaintiff, when he is at home, seeks "attention [from his siblings] over and over to the point that he creates conflicts" and plaintiff's mother "has to step in." AR 41. At the time of the hearing, plaintiff had been doing "better" in school because he was no longer "destroying school property or classroom property, and he is focused, he is seated" when he is in his classes (with the exception of when he has writing assignments, with which he struggles). *Id.* Plaintiff is often tardy for school because he does not like taking his ADHD medication, so his mother must wait until he calms down before she can get him to take his medication, otherwise he will yell at her and fight with her. AR 43. Even with his medication, plaintiff does not like to wake up and go to school. AR 43-44. With his medication, plaintiff has been able to remain in the classroom more because his urge to destroy property is tempered. AR 44. Plaintiff has run away from his school campus when his medication wasn't adequate. *Id.* On top of his ADHD, plaintiff also has Oppositional Defiant Disorder ("ODD"), which, despite being somewhat tempered by his currently more stable moods, as recently as the day before the hearing with the ALJ,

7

24cv1032

causes plaintiff to have outbursts where he loses his ability to control himself and he can become violent. AR 47-48.

Plaintiff's ODD-related episodes can lead to him saying he wishes he was never born, or that he did not exist. AR 51. He will claim nobody loves him. *Id.* During one episode, he ran away from a doctor's office. *Id.* He has kicked and hit windows and walls, as well as slammed the car door and thrown things at his mother in the car. *Id.* Although his classroom performance has improved academically, plaintiff is still having "peer trouble" at school. AR 53. He hits and kicks other children, and he takes toys away from them. AR 53-54. Plaintiff's "outburst" can be as numerous as four per day between school and bedtime, and five or six per day on a weekend. AR 58. Plaintiff struggles in the mornings, sometimes refusing to get out of bed and get ready for school, which leads to conflict with his mother. AR 58-59.

Viewed in its full context – let alone in light of the record as a whole – the ALJ's characterization of the evidence he cited was overly myopic. Although plaintiff has experienced some improvements in his ADHD symptoms, the ALJ's analysis does not sufficiently account for plaintiff's issues with interpersonal relationships that are related to his ODD, at least as presented in the evidence relied on by the ALJ. Thus, because it was not considered in its full context, the evidence relied on by the ALJ was not substantial evidence to support his finding of a moderate impairment in plaintiff's ability to interact with others. Moreover, plaintiff cites a body of evidence not expressly considered by the ALJ. *See generally* Doc. No. 21 at 12-16. That evidence includes the following:

- May 22, 2020, intake notes from Family Health Centers of San Diego that indicate plaintiff places peers and teachers in danger by engaging in unsafe behavior. AR 458.

- July 14, 2020, therapist's notes observing plaintiff threw an item at his mother. AR 453.

- A Family Health Centers of San Diego occupational therapy treatment note from March 2021 indicated plaintiff's hyperactivity was better controlled; but

his frustration and anger were worse, such that he "has been punching the walls and furniture." AR 313.

- A May 10, 2021, assessment report from San Diego Unified School District noting when plaintiff is "in an environment where his needs aren't immediately heard and addressed or things don't go according to plan," which can cause plaintiff to "quickly escalate" into behavior that can be "harmful" to others. AR 1095.

- A November 10, 2021, report from Family Health Centers of San Diego where plaintiff described another child at school as an "enemy" and reported getting in a fight with the "enemy." AR 481.

- In December 2021, plaintiff told a provider at San Diego Regional Center he was often "teased" by peers at school and siblings at home. AR 702.

- In December 2021, plaintiff reported he had difficulty understanding other's emotions. AR 894.

- A County Mental Health Services "client plan" dated December 2021 notes plaintiff has a history of inappropriately touching other students at school, and he cannot distinguish other people's emotions. AR 899.

- Nurse practitioner Virginia Meltzer's January 7, 2022, notes showing plaintiff is having difficulty at school because other children do not want to play with him, and plaintiff had at least one violent episode within the past several months at his school. AR 975-76.

- During a January 2022 therapy session, the therapist noted plaintiff's "difficulty following directives and understanding boundaries." AR 714.

- A January 2022 therapist's note identifying how plaintiff's "difficulty understanding boundaries" impairs plaintiff's social functions. AR 716.

- In February 2022, plaintiff's mother reported to Mid City Community Clinic "worsening symptoms of impulsivity" and violent behavior at school, which had led to psychiatric hospitalization. AR 971.

24cv1032

- A February 22, 2022, individual progress note detailing worsening behaviors overall for plaintiff, including struggles to interact with teachers and peers at school because plaintiff is ostracized by his peers. AR 724.

- Dr. Aaron Zaheer's notes from February 23, 2022, which describe "worsening symptoms of impulsivity [and] anger" that lead to plaintiff destroying property at school. AR 971.

- Treatment records from San Diego Regional Center dated March 2022 included mother's reports of plaintiff's assaults on peers and destructive behaviors at school, trying to punch a school counselor, "sexualized" behaviors, increased difficulty with peers since taking a stronger ADHD medication, and difficulty understanding other people's emotions. AR 726-27.

- Progress notes from March 10, 2022, show plaintiff often fights with his brother at home. AR 729-30.

- Progress notes from March 30, 2022, in which plaintiff reports he becomes "outraged when people say mean things to him and when people don't play with him." AR 733.

- Progress notes from July 6, 2022, show an impaired ability to make new friends. AR 769.

- At a March 2023 exam, APRN Kirsten Snyder described plaintiff's attitude as "uncooperative, defiant," and "guarded" while noting reports of increased frustration and defiant behavior correlated with better control over plaintiff's hyperactivity symptoms through increased ADHD medication. AR 949-51.

- An April 2023 version of client's Individualized Education Plan ("IEP") noted, notwithstanding progress as compared to the year before, "recent instances" of "kicking or hitting" a peer. AR 1234.

- Plaintiff has a well-documented history of rigidity in his interactions with others, particularly authority figures (often described as difficulty

10

understanding and respecting boundaries), and he resists any departures from his own plans or ideas about how things should go. *See, e.g.*, AR 1095 (March 10, 2021); 899 (December 1, 2021), 714 (January 19, 2022), 716 (January 27, 2022), 720 (February 11, 2022), 722 (February 17, 2022), 734 (March 2, 2022), 682-83 (August 16, 2022).

All of this evidence is relevant to the paragraph B criterion of interacting with others, but the ALJ's analysis does not take this evidence into account. This is not a simple case, as defendant contends, of plaintiff's condition being well managed by medication. *See* Doc. No. 25 at 4 (citing *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). A fulsome analysis in which the ALJ analyzed the whole record could conceivably conclude plaintiff's condition was appropriately managed. But to get to that point the ALJ must actually consider the evidence, rather than ignore significant probative evidence and cherry-pick from the record as happened here.[4]

The ALJ appears to have incorporated-by-reference some of his other analysis from step three. *See* AR 19 (basing a "moderate" finding partly on "the evidence discussed below in connection with Domain 3"). In an appropriate case, a Court might be able to meaningfully review the ALJ's decision if it relied on such incorporation by reference of a factual analysis elsewhere in the decision. But this is not such a case. As plaintiff notes, there is indeed "broad overlap" between the paragraph B criterion at issue and Domain 3. *See* Doc. No. 21 at 9. The applicable Regulations provide a test for when an impairment (or combination of impairments) is "functionally equal" to the listings when presented by minor claimants. *See* 20 C.F.R. § 416.926a(a). Like the Listings, the functional equivalence test is met if an ALJ finds a "marked" limitation in two "domains of functioning." *Id.* The

---

[4]    The ALJ's error at this step was not harmless because a finding of "marked" limitation could make plaintiff disabled. The Court considers remand the appropriate remedy for this error because it is for the ALJ to evaluate the evidence properly in the first instance. The ALJ must also make a finding vis-à-vis the paragraph A criteria, if necessary, because he did not reach that step.

24cv1032

ALJ in this case found a "marked" limitation in the domain of "interacting and relating with others." AR 21. The ALJ assesses impairment in that domain by considering how well the plaintiff can "initiate and sustain emotional connections with others, develop and use the language of [plaintiff's] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). The similarities between this standard and the paragraph B criterion far outnumber any differences.

Plaintiff does not contend they are always coterminous, but the "broad overlap" between the paragraph B criteria and the analogous domain makes it problematic for the ALJ to have found a moderate limitation in one of the paragraph B criteria by referencing his analysis of a very similar domain in which he found a marked limitation. Given the overarching similarities, the ALJ had to at least explain why the same evidence led to different legal conclusions, paying close attention to any distinctions between the paragraph B criteria and the closely analogous domain(s). Given the record in this case contains ample evidence that could support a "marked" limitation in the paragraph B criteria of "interacting with others," the ALJ needed to show his work in more detail to resolve inconsistencies between the paragraph B criteria and the functional equivalence analysis. The failure to do so renders the decision unsupported by substantial evidence. On remand, the ALJ shall reconsider the paragraph B criteria without engaging in any cherry picking. The ALJ shall also provide a sufficient analysis of any disparate findings between the paragraph B criteria and related domains.

### (2)    Whether the ALJ Properly Evaluated Plaintiff's Ability to Concentrate, Persist, or Maintain Pace Under the Paragraph B Criteria

The Regulations describe the "concentrate, persist or maintain pace" criterion as follows:

> This area of mental functioning refers to the abilities to focus attention on activities and stay on task age-appropriately. Examples include: Initiating and performing an activity that you understand and know how to do; engaging in an activity at home or in school at an appropriate and consistent pace;

completing tasks in a timely manner; ignoring or avoiding distractions while engaged in an activity or task; changing activities without being disruptive; engaging in an activity or task close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at school; and engaging in activities at home, school, or in the community without needing an unusual amount of rest. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. How you manifest this area of mental functioning and your limitations in using it depends, in part, on your age.

*See* 20 C.F.R. pt. 404, sub. pt. P, app. 1, § 112.00(E)(3). The ALJ found plaintiff had a mild limitation with regard to concentrating, persisting, or maintaining pace. AR 19. Plaintiff argues this finding was erroneous because the ALJ cherry-picked from the record rather than considering the record as a whole. Doc. No. 21 at 18.

Defendant (erroneously stating plaintiff did not challenge the ALJ's finding vis-à-vis the paragraph B3 criterion at issue) offers no defense of the ALJ's finding. Doc. No. 25 at 4. As many courts have noted, the failure to address an issue raised in the opening papers may be treated as a concession of the issue. *See Reyes v. Wells Fargo Bank, N.A.*, ___ F. Supp. 3d ___, 2017 WL 11568871, 2017 U.S. Dist. LEXIS 198129, at *11-12 (C.D. Cal. 2017) (collecting cases). The Court concludes defendant's failure to offer any argument rebutting plaintiff's contentions operates as a *de facto* concession those contentions have merit. Accordingly, the Court concludes the ALJ's analysis of the paragraph B3 criterion of concentrating, persisting, and maintain pace was not supported by substantial evidence and the matter must be remanded.

Although the waiver doctrine provides the Court an independently sufficient grounds for remanding this matter, the Court will nonetheless address the merits of plaintiff's arguments out of an abundance of caution (because the law disfavors forfeiture) and to provide guidance for the ALJ and the parties on remand.

The ALJ relied almost entirely on an August 25, 2021, psychological evaluation. *See* AR 19 (citing AR 466-73). That evaluation, in turn, comprised mostly assessments of plaintiff's raw cognitive abilities based on intelligence quotient (IQ) scores and

24cv1032

math/language ability. AR 466-73. The ALJ also relied on plaintiff's mother's estimate, made on the disability function report, that plaintiff could pay attention for 1-2 minutes without his ADHD medication, but he could pay attention for 5-10 minutes with his medication. AR 19 (citing AR 235). The gravamen of this area of mental functioning concerns "the abilities to focus attention on activities and stay on task age-appropriately." *See* 20 C.F.R. pt. 404, sub. pt. P, app. 1, § 112.00(E)(3). Plaintiff's cognitive abilities are not per se probative of this because plaintiff could be above average in his raw cognitive ability yet at the same time struggle to stay focused. To wit, being smart and having ADHD are not mutually exclusive conditions. The ALJ's reliance on plaintiff's cognitive functioning did not, therefore, adequately address the more specific inquiry at issue, which looks at how well plaintiff can stay on task, regardless of his raw cognitive abilities. Similarly, even if plaintiff's mother's assessment of plaintiff's ability to stay on task was the only piece of evidence in the record, the ALJ's analysis does not account for whether "5-10 minutes" of concentration ability (without mentioning *what* plaintiff is concentrating on) is age-appropriate for the plaintiff's ability to stay on task, which is the level of analysis the regulations demand. The ALJ's analysis was, therefore, too conclusory to have the support of substantial evidence.

As with the ability to interact with others, the ALJ attempted to incorporate by reference other portions of his analysis. AR 20. The ALJ's findings as to this paragraph B criterion and Domain 2 at step three were at least consistent in that they were both "mild." *Compare* AR 19-20 *with* AR 22-23. However, this consistency does not redeem the ALJ's analysis because both portions of the decision relied on the same evidence to support a substantively identical conclusion. *Id.* The Domain 2 analysis did not add anything of substance to the equation, it merely repeated the earlier conclusion on the same basis. The ALJ's analysis was, therefore, still inadequate whether he repeated it once or twice.

Moreover, as plaintiff points out, the record is rife with evidence that plaintiff's ability to concentrate and remain on task is severely impacted by his ADHD. For example, the ability to change tasks without being disruptive is legally material to this area of mental

functioning.  *See* 20 C.F.R. pt. 404, sub. pt. P, app. 1, § 112.00(E)(3). There is evidence in the record that shows plaintiff has serious difficulties transitioning between tasks. *See, e.g.*, AR 714, 722. Some of this evidence, which post-dates the psychological evaluation the ALJ found so persuasive, comes directly from plaintiff's school, an arena in which he must function on a daily basis. *See, e.g.*, AR 724 (describing "difficulty self-regulating when asked to engage in a non-preferred task"); *see also* AR 1094 (describing plaintiff's violent outburst triggered by an inability to transition from a "preferred activity"). The ALJ also appears to have overlooked the effect plaintiff's ADHD has on ***others,*** which is explicitly listed in the paragraph B criterion at issue. For example, plaintiff's IEPs note a strong tendency to distract other students. *See, e.g.*, AR 588; *see also* AR 727 (noting plaintiff's history of blocking peers from leaving the classroom).  The ALJ's analysis fails to consider these material aspects of the area of mental functioning at issue.[5] Rather, the Court concludes the ALJ isolated a specific quantum of evidence that could support a finding of "mild" limitation while ignoring the remainder of the record, which includes evidence that might in fact prove plaintiff is disabled. On remand, the ALJ must reconsider the evidence contained in the whole record and evaluate it under the controlling regulations.

### **(B)    Whether the ALJ Properly Evaluated the Functional Equivalence of Plaintiff's Impairments to the Relevant Listings**

At step three of the sequential evaluation process for child applicants, if a child applicant does not meet any Listing, the ALJ evaluates the impact of the claimant's

---

[5]    The Court has not identified ***all*** the evidence that might be material to assessing this area of mental functioning. The Court's analysis has been limited only to showing the ALJ failed to account for some evidence that is doubtlessly material. The briefing in this case is disorderly and only marginally helpful, and the ALJ's decision is often inscrutable, both of which negatively impact the Court's ability to review the record. In any event, assessing the entire record as a whole is the ALJ's job in the first instance, and the ALJ's analysis on remand should go further than the Court's has gone here. It suffices, for purposes of the Court's review, to show the ALJ ignored "significant probative evidence," which warrants remand. *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022)

impairments on five "domains" of functioning to determine whether the impairments are "functionally equivalent" to one of the listed impairments. *See generally* 20 C.F.R. § 416.926a. The Administration refers to this part of step three as the "'whole child' approach" to determining disability because it "accounts for all of the effects of a child's impairments singly and in combination." *See* SSR 09-1p, 2009 WL 396031, 2009 SSR LEXIS 1, at *14.

Plaintiff claims error in only one of the ALJ's functional domain assessments: the finding that plaintiff had a less than marked limitation in Domain 5, his ability to care for himself. Doc. No. 21 at 21-22; *accord* Doc. No. 25 at 6 n.4. Plaintiff argues the ALJ's conclusion was generally not supported by substantial evidence, particularly because the ALJ failed to articulate how plaintiff could have a "marked" limitation in the paragraph B criterion of "adapt or manage oneself" and a less than marked limitation in Domain 5 given the "broad overlap" between Domain 5 and the analogous paragraph B criterion.

For child disability applicants, the paragraph B criterion of "adapt or manage oneself" refers

> to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related activities; setting goals; making plans independently of others; maintaining personal hygiene; and protecting yourself from harm and exploitation by others. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. How you manifest this area of mental functioning and your limitations in using it depends, in part, on your age.

*See* 20 C.F.R. pt. 404, sub. pt. P, app. 1, § 112.00(E)(4). Domain 5, which is described elsewhere in the Code of Federal Regulations, refers to

> how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area.

16

24cv1032

*See* 20 C.F.R. § 416.926a(k). The Regulations provide further guidance for applying that standard to "school-age children" like plaintiff who

> should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

*See* 20 C.F.R. § 416.926a(k)(2)(iv). Based on a comparison of the two regulations, the paragraph B criterion at issue and Domain 5 both address how plaintiff's impairments (in this case, psychological impairments) affect his ability not only to take care of himself in the sense of managing his personal hygiene, but also how to care for himself socially by engaging in positive behaviors that maximize the health and safety of himself and others. The Court agrees with plaintiff there is a "broad overlap" between the two standards. In fact, they appear to be virtually indistinguishable from each other as a matter of substance. Although it may be possible to have different findings at different steps, as the Court has already noted, an ALJ must carefully analyze how the evidence fits one standard and does not fit the other. This is particularly true where, as here, the ALJ relied on the same evidence yet reached markedly different conclusions.

The ALJ's analysis here is further suspect on the merits because it appears the ALJ did not consider significant probative evidence related to Domain 5. For example, SSR 09-1p provides a particularly salient example of how ADHD, which is at issue in this case, might be rated in Domain 5 where it describes a child who "often impulsively dashes out into the street without looking for cars and considering his safety. Being responsible for his own safety requires the child to stop moving and to be cautious before stepping into the street. These difficulties in self-related activities indicate a limitation in the domain of

'Caring for yourself.'" *See* 2009 WL 396031, 2009 SSR LEXIS 1, at *14. There is evidence showing plaintiff causes injury to himself and others. AR 458, 1095. In one instance, when left unsupervised, plaintiff tried to start a fire, then threw burning cardboard into his closet. AR 45. At home, he will try to climb fences and escape from his yard. AR 727. There is also evidence showing plaintiff has a history of running away from his school. *See, e.g.*, AR 44l *see also* AR 588 (April 20, 2022, IEP noting "daily" elopement from school); AR 1238 (April 10, 2023, IEP noting plaintiff attempts to climb over fences to leave the school campus). In at least one instance, he ran away from a doctor's appointment into a parking lot. AR 51.

The ALJ's analysis focused extensively on plaintiff's ability to see to his personal hygiene—things like brushing teeth and getting dressed. *See* AR 25, 29. But, as the Regulations make clear, Domain 5 is about more than just the ability to keep oneself clean. Plaintiff might have a marked limitation if, even though he can brush his teeth and put on his clothes, he is unable to stay out of serious danger because of his impairments. The ALJ's failure to consider significant probative evidence within Domain 5 leads the Court to once again conclude the ALJ cherry-picked the evidence, so the decision is not supported by substantial evidence. On remand, the ALJ shall reconsider plaintiff's rating in Domain 5, taking into account all aspects of the regulatory standard for which there is significant probative evidence in the record.

////

////

////

////

////

////

////

////

////

# IV. CONCLUSION

The final decision of the Commissioner is not supported by substantial evidence. The Court recommends the District Judge enter an order (1) vacating the final decision of the Commissioner; (2) remanding with instructions to reevaluate the evidence of record; and (3) directing the Clerk of Court to prepare and enter a separate judgment for plaintiff and against defendant.

Dated: June 10, 2025

Hon. Karen S. Crawford
United States Magistrate Judge

24cv1032